**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

＊ ＊ ＊

| | |
|---|---|
| HIEP D. LE,<br><br>           Plaintiff,<br><br>     v.<br><br>BANK OF AMERICA, NATIONAL<br>ASSOCATION; EQUIFAX INFORMATION<br>SERVICES, LLC.,<br><br>           Defendants | Case No. 2:16-cv-02393-RFB-GWF<br><br>**<u>ORDER</u>**<br><br>Plaintiff's Motion for Partial Summary<br>Judgment (ECF No. 26)<br><br>Defendant's Motion for Summary Judgment<br>(ECF No. 30) |

## I.  INTRODUCTION

Before this Court comes Plaintiff Hiep D. Le ("Plaintiff" or "Le")'s Motion for Partial Summary Judgment (ECF No. 26), and Defendant Equifax Information Services, LLC ("Defendant" or "Equifax")'s Motion for Summary Judgment (ECF No. 30). For the reasons set forth below, both motions are DENIED.

## II.  PROCEDURAL BACKGROUND

On October 13, 2016, Plaintiff filed a Complaint with Jury Demand against Bank of America, National Association ("Bank of America") and Equifax Information Services, LLC, alleging violations of the Fair Credit Reporting Act ("FCRA"). (ECF No. 1).

Equifax filed its Answer with Jury Demand on January 26, 2017. (ECF No. 16). On August 24, 2017, Plaintiff filed the instant Motion for Partial Summary Judgment. (ECF No. 26). The same day, Equifax filed its Motion for Summary Judgment. (ECF No. 30). Equifax filed a Response to Plaintiff's Motion on September 28, 2017. (ECF No. 37). The same day, Plaintiff filed a Response to Defendant's Motion. (ECF No. 39). On October 12, 2017, Equifax filed a Reply to

its Motion. (ECF No. 48). Equifax filed a Notice (ECF No. 51) that the parties had stipulated to Equifax withdrawing its earlier filed Response, and filed another Response on October 16, 2017. (ECF No. 52). Plaintiff filed a Reply to his Motion on October 30, 2017. (ECF No. 54).

## III.  LEGAL STANDARDS

### A.  Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014).

If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (quotation marks omitted).

### B.  The Fair Credit Reporting Act

"Congress enacted the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x, in 1970 'to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.'" Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1153 (9th Cir. 2009) (quoting Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007)). "As an important means to this end, the Act sought to make 'consumer reporting agencies exercise their grave responsibilities [in assembling and evaluating consumers' credit, and disseminating information about consumers' credit] with fairness, impartiality, and a respect for the consumer's right to privacy.'" Id. (alteration in original) (quoting 15 U.S.C. § 1681(a)(4)).

"The FCRA expressly creates a private right of action for willful or negligent noncompliance with its requirements. . . . However, § 1681s–2 limits this private right of action to claims arising under subsection (b), the duties triggered upon notice of a dispute from a CRA." Id. at 1154 (citations omitted); see also Nelson v. Chase Manhattan Mortg. Corp., 282 F.3d 1057, 1059–60 (9th Cir. 2002) ("That with these words Congress created a private right of action for consumers cannot be doubted. That right is to sue for violation of any requirement "imposed with respect to any consumer.")

### C. Section 1681i Requirements of The FCRA

A consumer reporting agency ("CRA")'s duties pursuant to § 1681s–2 are triggered when, *inter alia*, the consumer reporting agency is notified of a consumer dispute arising under another subsection, § 1681i. 15 U.S.C. § 1681i(a)(1) provides in relevant part:

> (A)  In general. Subject to subsection (f), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller. . . .

Following a reinvestigation, a consumer reporting agency must provide the consumer the results of the reinvestigation, pursuant to 15 U.S.C. § 1681i(a)(6), which provides:

> "(A)  In general. A consumer reporting agency shall provide written notice to a consumer of the results of a reinvestigation under this subsection not later than 5 business days after the completion of the reinvestigation, by mail or, if authorized by the consumer for that purpose, by other means available to the agency.

### D. Civil Liability Under FCRA

The FCRA provides for actual damages, punitive damages, and attorney's fees for willful violations of its statutory requirements. 15 U.S.C. § 1681n(a). If a plaintiff establishes a negligent violation of the statute, the FCRA provides for actual damages and attorney's fees. 15 U.S.C. § 1681o(a). "The term 'actual damages' has been interpreted to include recovery for emotional distress and humiliation. . . . [N]o case has held that a denial of credit is a prerequisite to recovery

under the FCRA." <u>Guimond v. Trans Union Credit Info. Co.</u>, 45 F.3d 1329, 1333 (9th Cir. 1995) (citations omitted).

The question of whether a consumer reporting agency's failure to reinvestigate was negligent is typically one for the jury, unless the court finds, accepting as true all facts the nonmovant asserts, that no rational jury could find that the CRA was not negligent. <u>Dennis v. BEH-1, LLC</u>, 520 F.3d 1066, 1070 (9th Cir. 2008) (finding "remand would be pointless" where the record showed that Experian overlooked a document that was easily accessible to the public). The court may find willfulness as a matter of law where the defendant "violates an unambiguous statutory requirement" and "that fact alone [is] sufficient to conclude that [the defendant's] violation is reckless, and therefore willful." <u>Syed v. M-I, LLC</u>, 853 F.3d 492, 505 n.7 (9th Cir. 2017) <u>cert. denied</u>, 138 S. Ct. 447 (2017) (examining a violation of Section 1681b(b)(2)(A)). "The FCRA does not impose strict liability, however—an agency can escape liability if it establishes that an inaccurate [credit] report was generated despite the agency's following reasonable procedures. The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases." <u>Guimond</u>, 45 F.3d at 1333 (citation omitted).

## IV.    UNDISPUTED FACTS

The Court finds the following facts to be undisputed. Plaintiff is a resident of Las Vegas, Nevada. On June 20, 2010, Plaintiff filed for Chapter 13 bankruptcy. On his petition he included an account with Target National Bank ("Target National") and an account with Countrywide Home Lending ("Mortgage Account"). On March 5, 2015, the Bankruptcy Court confirmed Plaintiff's plan. On October 6, 2015, the Bankruptcy Trustee entered his final report and account, noting the presence of both the Target National and Mortgage Account. Plaintiff's bankruptcy was discharged on October 15, 2015.

Equifax is a consumer reporting agency as defined by FCRA. As a CRA, Equifax regularly engages in the practice of assembling or evaluating consumer credit information, or other

information on consumers, for the purpose of furnishing consumer reports to third parties. Equifax does not originate or create any credit information.

On March 29, 2016, Plaintiff sent Equifax a dispute letter regarding information he believed to be inaccurate on his credit report involving the Mortgage Account and the Target National account. Plaintiff attached to the letter a copy of a credit report he requested on February 1, 2016. He also attached a copy of his Chapter 13 bankruptcy petition. Equifax received Plaintiff's dispute letter on April 10, 2016.

In 2016, when Plaintiff submitted his dispute, Equifax had several procedures for processing and investigating consumer disputes, which were governed by the following documents: the Automated Credit Reporting Online ("ACRO")-Maintenance Training Manual, the Customer Service/Indicating Workbook, the Mail Dispute Indicating Manual, the Vendor Participant Workbook, and the Corporate Compliance Policies. Equifax employs a three-step reinvestigation process, as described in the manuals referenced above; the first step is "indicating," the second step is "verification," and the third step is "maintenance." "Indicating" refers to the steps Equifax takes upon receiving written correspondence from a consumer disputing information in their credit file. Equifax's procedures require the indicator to review the consumer's dispute and determine which items need to be verified directly with the creditors, or "furnishers." "Verification" refers to the process wherein the information contained in the response from the furnisher is entered into the consumer's credit file. During the "maintenance" step, Equifax's procedures require the maintenance reviewer to review the results received from a furnisher and apply any policies to those results; the maintenance reviewer completes the reinvestigation process.

Equifax uses third party vendors to complete procedures in the reinvestigation process, such as retrieving the dispute letters and scanning them into system, processing the disputes and conducting the reinvestigation, and mailing Equifax's consumer disclosures to consumers. The third party that assists Equifax in mailing documents to consumers is Fidelity National Card Services ("Fidelity National"). Fidelity National utilizes another entity, Fidelity Output Solutions ("Fidelity Output") to print and mail documents on behalf of Equifax.

Third party vendors were involved in the initial reception and processing of Plaintiff's dispute and reinvestigation. However, after performing a search of its records for the period March 29, 2016 to September 29, 2016, Fidelity Output was unable to locate records pertaining to an Equifax reinvestigation letter having been mailed or directed to Plaintiff.

Equifax maintains an Automated Consumer Interview System ("ACIS") which reflects how a consumer's credit file looks at the completion of a dispute and reinvestigation process. Equifax can contemporaneously access Plaintiff's file on ACIS, which includes a "confirmation screen" with the consumer's name, mailing address, and how many copies of the reinvestigation results were allegedly sent. According to ACIS, the reinvestigation of Plaintiff's dispute was completed April 29, 2016. There is, however, no independent way to confirm this date. Plaintiff's file in ACIS does not include a date or time notation for when his reinvestigation results letter was mailed; the ACIS file only includes a timestamp for the date the file is accessed.

Equifax did conduct a reinvestigation of Plaintiff's disputes and made changes to his file. Plaintiff incurred out-of-pocket costs, in the form of gas costs traveling to his attorney's office to discuss the dispute, time incurred in considering the information he had not been provided, as well as costs of mailing. He also asserts as damages the cost of traveling to the deposition.

## V.  DISPUTED FACTS

The parties dispute whether Plaintiff received the reinvestigation results letter. The parties further dispute whether, if Plaintiff did not receive the letter, Equifax had reasonable procedures in place for the task of mailing reinvestigation results.

The parties additionally dispute whether Plaintiff was actually harmed, even if he did not receive the results letter.

## VI.  DISCUSSION

### A.  Reasonableness of Equifax's Procedures

Plaintiff argues that the FCRA requires Equifax to timely notify Plaintiff of the results of reinvestigation. Plaintiff avers that Equifax's failure to timely send him the results of its

reinvestigation establishes a valid claim for a violation of the CRA's requirements under the FCRA for both the failure to send the results and the failure to do so in a timely manner. Plaintiff contends that Equifax's conduct was clearly reckless because it delegated nearly every aspect of its statutory reinvestigation obligations to third party vendors, but produced no evidence of Equifax's efforts to supervise the third parties or even keep internal records to later check and definitively confirm: (1) the results of reinvestigation were actually sent to Fidelity National for print and mail, or (2) whether Fidelity Output actually printed and mailed the reinvestigation to Plaintiff. At minimum, Plaintiff argues, Equifax's inability to provide any evidence of oversight supports a finding of negligence. In support of his arguments, Plaintiff relies heavily on the deposition of Equifax's designated person most knowledgeable, Pamela Smith ("Smith"). Plaintiff also relies on the Declaration of Aaron Conrad, an employee of Fidelity Output, who stated that Fidelity Output had no records of a mailing to Plaintiff. Plaintiff argues that Equifax's inability to confirm that his reinvestigation results letter was mailed is evidence that Equifax's procedures – including delegation of printing and mailing tasks to Fidelity National and Fidelity Output – were unreasonable.

Equifax contends the undisputed record shows that it conducted a reasonable reinvestigation. At minimum, Equifax argues, Plaintiff cannot show undisputed evidence that Equifax's procedures for generating and delivering the reinvestigation results through its mail vendor were unreasonable. Equifax relies on Smith's Declaration, in which she described the procedures in place for delivery of reinvestigation results, pursuant to an agreement between Equifax and Fidelity National. Equifax further argues that a FCRA violation requires unreasonableness at minimum, as the statute does not provide for strict liability. Equifax has raised a presumption that notice was timely mailed, even if a letter was in fact not mailed, because it followed its ordinary and reasonable procedures. Equifax contends that, because Plaintiff has no evidence of unreasonableness, he cannot prevail on the issue of willfulness.

The Court finds that there is a genuine dispute as to the reasonableness of Equifax's procedures regarding its supervision and monitoring of its vendor to ensure the mailing of reinvestigation results letters and to ensure that such letters were mailed in a timely fashion. There

remains a genuine dispute regarding the reasonableness of procedures not merely because Equifax contracts certain processes to third parties, but because Equifax does not provide undisputed evidence that it adequately supervised the Fidelity entities' efforts to comply with Equifax's obligations under the FCRA. For example, Equifax's 30(b)(6) designee, Ms. Smith, conceded that she was unaware of any report or similar confirming communication/documentation that Equifax requires Fidelity National to send to Equifax to confirm or document that the report of reinvestigation was sent to the consumer and done so in a timely manner. Smith conceded that she was unaware of any procedures Equifax has to "confirm that Fidelity [Output] has, in fact, mailed out the reports of the reinvestigation or the documents that Equifax forwards to Fidelity [National] for mailing." Based on the record which includes the testimony of Smith and the evidence that Fidelity Output has no record of a reinvestigation results letter for Plaintiff, the Court finds that a reasonable juror could find that Equifax does not have in place a reasonable means for ensuring that reinvestigation letters are being sent to consumers and that, if sent, they are being sent within the specified time frame. Summary judgment is therefore not warranted in favor of Equifax.

The Court also finds that Plaintiff is not entitled to summary judgment. The FCRA is not a strict liability statute; the mere fact that a reinvestigation letter may not have been sent to the Plaintiff does not establish liability as a matter of law. There are genuine issues of disputed fact as to whether Plaintiff received a reinvestigation results letter within the time frame required by the FCRA. Moreover, a reasonable juror could find that Equifax acted reasonably in its delegation and supervision of third party vendor Fidelity National for the tasks of printing and mailing reinvestigation results letters to consumers.

As to the issue of willfulness, the Court also finds that there remains a genuine dispute of material fact for the jury to resolve at trial. A reasonable juror could find that Equifax's inability to confirm either that Plaintiff's reinvestigation results were sent to Fidelity National, or that Fidelity Output actually mailed the results letter to Plaintiff or the combination of these disputed facts in conjunction with the record in this case, so violates an objective standard that Equifax's conduct "entail[ed] an unjustifiably high risk of harm that [was] either known or so obvious that it should [have been] known." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007). This is to

say that a CRA cannot contract with a third party to fulfill the CRA's obligations under the FCRA and then recklessly or intentionally fail to institute reasonable procedures to ensure that the third party is actually fulfilling the CRA's obligations under the FCRA – the mere act of delegation is not synonymous with reasonableness. On the other hand, a reasonable juror could also find that Equifax's conduct, specifically its reliance on established procedures, was objectively reasonable, precluding a finding of willfulness.

For these reasons, both Motions for Summary Judgment are denied.

### B. Plaintiff's Damages Under FCRA

Plaintiff argues that he can recover actual damages in the form of his out-of-pocket expenses, pursuant to 15 U.S.C. § 1681o. Plaintiff contends that he suffered a cognizable injury in the context of FCRA, as Equifax was required to send a results letter regardless of whether Plaintiff's dispute was determined to be nonfrivolous or frivolous. Plaintiff also requests punitive damages if Equifax's conduct is found to be willful, under 15 U.S.C. § 1681n.

Equifax contends that Plaintiff cannot show that he suffered damages. Plaintiff does not show his credit was harmed, or show by expert testimony that he suffered humiliation or mental distress. Equifax argues that Plaintiff's damages are purely costs related to litigation.

The Court finds that Plaintiff could establish actual damages. Although he does not assert that his credit was harmed, the Court finds that the alleged deprivation of his statutory right to receive the results of the reinvestigation letter constitutes an injury. The Court finds that the concrete interest implied in Section 1681i involves a consumer's access to current and accurate information about her credit file. Once a consumer disputes information on her file, triggering a reinvestigation of the file, unless and until the consumer reporting agency sends a letter containing the results of the reinvestigation, the consumer has no way of knowing whether the reinvestigation was completed or whether the perceived inaccuracies, if any, were removed from her credit report. The stress resulting from inaccurate information appearing on one's credit report is unlikely to dissipate until the consumer receives the reinvestigation results letter. The statute does not require that expert evidence be submitted to establish such damages. Even when

a consumer has not actually been denied credit or faced emotional harm, the Court finds that actual damages are recoverable from a failure to receive the reinvestigation results letter.

The Court also finds that Plaintiff could establish punitive damages if the jury determines that Equifax willfully violated the FCRA. Such a willful violation could be inferred from Equifax's alleged informed yet reckless failure to have in place a set of reasonable procedures for ensuring that reinvestigation letters are mailed and mailed within the specified time frame required by the FCRA.

**VII.    CONCLUSION**

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment (ECF No. 26) is DENIED.

**IT IS FURTHER ORDERED** that Defendant's Motion to Summary Judgment (ECF No. 30) is DENIED.

**IT IS FURTHER ORDERED** that the parties are directed to submit a Joint Pretrial Order by April 9, 2018.

DATED this 19th day of March, 2018.

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**